Erica A. Maharg (Bar No. 279396)
Email: eam@atalawgroup.com
AQUA TERRIS AERIS LAW GROUP
8 Rio Vista Ave.
Oakland, CA  94611
Phone: (510) 473-8793

Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: (310) 394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>FELBRO. INC., a California corporation; ROBERT & NORMAN PROPERTIES LLC, a California limited liability company,<br><br>Defendants. | Case No.: 2:24-cv-06870-AH-JPRx<br><br>**CONSENT DECREE   [JS-6]** |

[PROPOSED] CONSENT DECREE

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendants Felbro, Inc. and Robert & Norman Properties LLC (collectively "Defendants") own and operate a facility at 3666 Olympic Blvd., Los Angeles, CA  92203, under Waste Discharger Identification number ("WDID") 4 19I010666 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of machining, fabricating, and welding metal in-store display units and the assembly or packing of pre-fabricated wood and plastic components. The Facility is categorized under Standard Industrial Classification ("SIC") Code 2542, covering Office and Store Fixtures, Partitions, Shelving, and Lockers, except wood;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit")[1], and the Federal Water

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendants' operations at the Facility are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendants, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on June 12, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, their registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on August 14, 2024, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:24-cv-06870 ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains

and surface waters, including the Los Angeles River (collectively, "Receiving Waters");

WHEREAS, Defendants deny Plaintiff's allegations; and

WHEREAS, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings; and

WHEREAS, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    LA Waterkeeper has standing to bring this action.

5.    The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall

have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**I.     OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

**II.    AGENCY REVIEW AND DEFINITIONS**

    **A.     AGENCY REVIEW OF CONSENT DECREE**

8.     Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

CONSENT DECREE

10.  <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.  DEFINITIONS**

11.  Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.  "BAT" means the Best Available Technology Economically Achievable.

b.  "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.  "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.  "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.  "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

5

CONSENT DECREE

i.     "Forecasted Rain Event" means a rain event with a greater than 50% probability of occurrence of 0.1 inches forecasted at least twenty-four (24) hours prior to its occurrence as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90023, Los Angeles, CA, USA"[2].

j.     "MIP" means a Monitoring Implementation Plan.

k.     "PPT" means Pollution Prevention Team.

l.     "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.     "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.     "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.     "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.     "SWPPP" means a Storm Water Pollution Prevention Plan.

q.     "Term" means the period between the Effective Date and the "Termination Date."

r.     "Termination Date" means the latest of:

     i.     June 30 following three (3) years from the Effective Date;

     ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=34.020865&lon=-118.202177.

6

CONSENT DECREE

June 30 following three (3) years after the Effective Date; or

    iii.    seven (7) days from Defendants' completion of all payments and other affirmative duties required by this Consent Decree.

    iv.    Notwithstanding the foregoing, the Consent Decree will terminate (a) fifteen (15) calendar days after Defendant notifies LA Waterkeeper that it has received written approval/acceptance notification from the Regional Board via SMARTS or otherwise for "No Exposure Certification" ("NEC") coverage at the Facility following an inspection by the Regional Board or the United States Environmental Protection Agency that confirms compliance with all applicable NEC requirements of the General Permit, or (b) within thirty (30) calendar days after Defendant provides notice to LA Waterkeeper pursuant to Paragraph 31 below and LA Waterkeeper confirms that it agrees with the justification for NEC coverage contained therein.

    s.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.    <u>Current and Additional Best Management Practices.</u> At all times, Defendants shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit.

13.    Rain Gauge/Sensor. Defendants shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) business days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendants shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Except in the event of equipment malfunction, data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, but shall not be conclusive as to whether a discharge of stormwater associated with industrial activities has occurred or when a discharge may have commenced for the purposes of determining Defendants' compliance with its obligations under the General Permit or this Consent Decree.

14.    Structural and Non-Structural BMPs for the Facility. No later than forty-five (45) days of the Effective Date, unless otherwise noted, Defendants shall develop and implement the following BMPs at the Facility:

a.    Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility;

b.    Install permanent concrete berms, curbs, or similarly effective physical barriers that prevent storm water discharges from any point other than Discharge Points, including without limitation, along the southeast concrete wall (near the Rotary Screw Compressor area).  If not feasible due to the retained volume of stormwater, place wattles/ filters/ socks prior to discharge from this location and sample discharges for the pollutants listed in Table 1 below.

c.    Implement a sweeping program with a long handle push broom on all paved areas with such sweeping to be conducted (1) at least once per week; and (2) on any day in which the transfer of

8
CONSENT DECREE

materials into the scrap metal recycling bin is performed. Sweeping shall be performed around the metal recycling bin and on the driveway.

d.    Employ and secure new metal absorbing wattles/filters/filtration socks (biochar or other equivalent media, but not Filtrexx Envirosoxx) to remove sediments and metals in storm water discharged from the Facility, including without limitation around the metal recycling bin if the metal recycling bin is not located under a canopy that protects it from exposure to storm water, and, within 24 hours prior to a Forecasted Rain Event, across the driveway upstream from the sampling point. Where feasible considering facility layout and operations, reconfigure and position new wattles/filters/socks to achieve maximum contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendants shall, thereafter, employ and secure new wattles/filters/socks in the same manner annually prior to the start of the Wet Season, no later than September 15th;

e.    During each Wet Season, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

f.    Within twenty-four (24) hours prior to a Forecasted Rain Event, inspect all wattles/filters/socks deployed at the Facility;

g.    Within twenty-four (24) hours prior to a Forecasted Rain Event, remove any exposed waste material and cover all industrial

materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings designed to be sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them under or into a covered structure adequate to prevent exposure to rainfall;

h.   Institute an equipment and vehicle maintenance program that ensures:

i.   no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

ii.   maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

iii.   when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

i.   Repair gutters and downspouts at the Facility sufficient to ensure treatment of the storm water prior to discharge.

j.   Within seven (7) days of each of the BMPs described in subparagraphs (a), (b), (d), and (i) of this paragraph being implemented, Defendants shall confirm to LA Waterkeeper in writing, with representative photographs, that such BMP has been implemented as set forth above.

**B.   SAMPLING AT THE FACILITY**

15.   Defendants shall develop a monitoring program consistent with the General Permit. During the Term, Defendants shall collect samples of storm water

CONSENT DECREE

discharge from each Discharge Point from all Qualifying Storm Events. Such sampling shall take place as soon as practicable within the four (4) hour period required by the General Permit § XI.B.5. If Defendants would have been required to collect samples during a rain event pursuant to this Consent Decree had such rain event produced a discharge, but Defendants did not collect samples because such rain event did not produce a discharge, then Defendants shall document the inability to sample by taking photographs during the rain event of each Discharge Point from which no discharge occurred. Defendants shall submit such photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within five (5) business days of a written request for such records by LA Waterkeeper.

16.     Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendants conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendants shall promptly notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

17.     Laboratory and Holding Time. Except for pH samples, Defendants shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

18.    Detection Limit. Defendants shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

19.    Reporting. Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper within five (5) business days of receiving a request for the laboratory report with the results.

C.    **REDUCTION OF POLLUTANTS IN DISCHARGES**

20.    Table 1 Numeric Limits. Defendants shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Annual Limit | Instantaneous Limit | Source of Limit |
|---|---|---|---|
| Aluminum | 0.75 mg/L | | Annual NAL |
| COD | 120 mg/L | | Annual NAL |
| Iron | 1.0 mg/L | | Annual NAL |
| N+N | 0.68 mg/L | | Annual NAL |
| Oil & Grease | 15 mg/L | 25 mg/L | Annual NAL |
| pH | 6.5-8.5 SU | | Basin Plan |
| TSS | 100 mg/L | 400 mg/L | Annual NAL |
| Zinc | 0.159 mg/L | | LA River NEL |

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

12

21.    Table 1 Exceedances. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: an Exceedance occurs when (a) two (2) or more analytical results from samples taken for any single parameter within a Reporting Year exceeds the applicable annual limit contained in Table 1, or (b)  one (1) or more analytical results from samples taken for any single parameter within a Reporting Year exceeds the applicable instantaneous limit in Table 1. An Exceedance shall constitute a violation of this Consent Decree.

22.    Action Plan. As of the Effective Date, and for the remainder of the Term, if  storm water samples demonstrate an Exceedance as defined above, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"), provided, however, an Action Plan shall not be required when the BMPs for the Exceedance were addressed in a previous Action Plan in the same Reporting Year and such BMPs were not yet implemented as of the date of the sampling that led to the Exceedance. The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the receipt of the laboratory report demonstrating the Exceedance, as applicable.

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each pollutant exceedance; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as practicable, but in no event later than ninety (90) days following the submission of the Action Plan,

13

CONSENT DECREE

unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendants shall confirm to LA Waterkeeper in writing, with photographs (if possible), that such BMPs have been implemented as set forth in the Action Plan.

b.     Action Plan Proposed BMPs. The following BMPs should generally be considered, where appropriate, for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.     Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the designated Discharge Point.

ii.    Sweeping. Purchasing a backpack HEPA vacuum sweeper to capture particulates that are inaccessible to the broom sweeper, with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at the Facility, or increasing the frequency of such sweepers.

iii.   Treatment Systems. Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.    Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of

14

CONSENT DECREE

the application of various BMPs, and any adverse environmental impact of the BMPs.

    c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

    d.    Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

**D.    VISUAL OBSERVATIONS**

23.    <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct visual observations at least once during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

24.    <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendants shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such observations shall include, if applicable to the Facility, outfalls,

15

CONSENT DECREE

Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

25.    Visual Observations Records. Defendants shall maintain observation records to document compliance with Paragraphs 23 and 24. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of the foregoing.  Defendants shall provide LA Waterkeeper with a copy of those records within seven (7) business days of receipt of a written request from LA Waterkeeper for those records.

26.    Employee Training Program. Within thirty (30) days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated

Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendants' personnel to ensure effective implementation of all BMPs at the Facility;

b. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. <u>Training Frequency</u>. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>. Defendants shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

CONSENT DECREE

e.   Visual Observation Training. Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   Non-Storm Water Discharge Training. Defendants shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

h.   Records. Defendants shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) business days of receipt of a written request.

27.   SWPPP Revisions.

a.   Initial SWPPP Revisions. Defendants shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.   A pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving

18

CONSENT DECREE

Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

    iii.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.    A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

    v.    A MIP as required by Sections XI and X.I of the General Permit;

    vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

    vii.    A Training Program as described above in Paragraph 26.

    b.    Additional SWPPP Revisions.

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendants shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

19

CONSENT DECREE

ii.      Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendants shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.     <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 27.a and 27.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' complete SWPPP to provide Defendants with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendants shall upload the revised SWPPP to SMARTS.

**E.**     **COMPLIANCE MONITORING AND REPORTING**

28.     LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring

compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendants shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendants with at least seventy-two (72) hours' notice prior to a dry weather Site Inspection and at least twenty-four (24) hours' notice (with such notice being delivered during normal business hours) for a wet weather Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendants collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendants shall collect the sample and provide a split sample to LA Waterkeeper upon request. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendants' representative. LA Waterkeeper shall be permitted to take photographs or video recordings of outdoor operations during any Site Inspection.

29. Document Provision. During the Term, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a. Defendants shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents

related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b.    Within seven (7) business days of receipt by Defendants, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

30.    <u>Compliance Monitoring</u>. Defendants shall partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent Decree during the Term by paying Six Thousand Dollars ($6,000.00) within thirty (30) days of the Entry Date.  Defendants shall pay an additional Two Thousand Five Hundred Dollars ($2,500.00) annually on the Entry Date for all subsequent years during the Term. Payments pursuant to this Paragraph shall be made via check or electronic wire transfer. If the payment is made by check, it shall be made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    NO EXPOSURE CERTIFICATION**

31.    If Defendant intends to apply for an NEC for the Facility, at least fifteen (15) days prior, it shall first confirm to LA Waterkeeper in writing that it has complied with all applicable requirements set forth in the General Permit to qualify for a NEC, and shall provide LA Waterkeeper with the NEC Checklist pursuant to General Permit § XVII.F.2 demonstrating that no industrial materials or activities are, or will be in the foreseeable future, exposed to precipitation.

CONSENT DECREE

32.     LA Waterkeeper shall review the contents of Defendants' notice provided pursuant to Paragraph 31 and, if it agrees that the Facility meets the criteria for an NEC, it shall inform Defendant of same in writing.  LA Waterkeeper may request to inspect the Facility for purposes of evaluating the contents of Defendants' notice in accordance with the requirements set forth in Paragraph 28.

### G.     ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

33.     <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River Watershed, Defendants shall make a payment totaling Twenty-Five Thousand Dollars ($25,000.00) to South Coast Trout Unlimited made within one hundred fifty (150) days of the Entry Date, payable to South Coast Trout Unlimited, 3154 Glendale Blvd. #117, Los Angeles, CA 90039. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.     <u>LA Waterkeeper's Fees and Costs</u>. Defendants shall pay a total of Forty-Four Thousand Dollars ($44,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter. The first payment of $20,000 shall be made within thirty (30) days of the Entry Date. The second and final payment of $24,000 shall be made within seventy-five (75) days of the Entry Date. The payment shall be made via check or wire transfer to: Aqua Terra Aeris Law Group, 8 Rio Vista Ave., Oakland, CA  94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.     <u>Missed Deadlines</u>. In the event that Defendants fail to submit to LA Waterkeeper any document, report, or communication required by this Consent Decree, Defendants shall pay a stipulated payment of Four Hundred Dollars ($400)

23

CONSENT DECREE

Case 2:24-cv-06870-AH-JPR   Document 27   Filed 03/09/26   Page 25 of 32   Page ID #:283

per day, if Defendants do not cure the deficiency within fourteen (14) days of being notified of the issue. Such stipulated payments shall be made by check payable to the organization and for the sole purpose of funding environmentally beneficial projects identified in Paragraph 33. Defendants agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.     Interest on Late Payments. Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.   DISPUTE RESOLUTION

37.     Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38.     Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 37, the

CONSENT DECREE

Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.    <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint or could have been raised in the 60-Day Notice Letter and/or Complaint based upon information known to Plaintiff at the time of filing up to and including the Termination Date of this Consent Decree.

41.    <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants'

25

CONSENT DECREE

compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.    No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses it may have to any alleged violations that may be raised in the future.

44.    Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    Authority. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

48.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written

agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50. Choice of Law. The laws of the United States shall govern this Consent Decree.

51. Diligence. Defendants shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52. Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendants are complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

CONSENT DECREE

56.     Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57.     Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendants: |
|---|---|
| Los Angeles Waterkeeper | Felbro, Inc. |
| Benjamin Harris | Howard Feldner |
| Erina Kwon | Jeff Feldner |
| Madeleine Siegel | 3666 Olympic Blvd, |
| 360 E 2nd St., Suite 250 | Los Angeles, CA 90023 |
| Los Angeles, CA 90012 | Email: h.feldner@felbrodisplays.com |
| Email: ben@lawaterkeeper.org | Email: jfeldner@felbrodisplays.com |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |

28

CONSENT DECREE

With copies to:
Erica A. Maharg
Aqua Terra Aeris Law Group
8 Rio Vista Ave.
Oakland, CA  94611
Email: eam@atalawgroup.com
Phone: (510) 473-8793

With copies to:
Ira J. Klein
Cox, Castle & Nicholson LLP
2029 Century Park East, Suite 2100
Los Angeles, CA 90067
Email: iklein@coxcastle.com
Phone: (310) 824-2129

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

29
CONSENT DECREE

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2026          By: _____
                                      Bruce Reznik
                                      Executive Director
                                      Los Angeles Waterkeeper

Dated: _____, 2026          By: _____
                                      Howard Feldner
                                      President
                                      Felbro, Inc.

Dated: _____, 2026          By: _____
                                      Howard Feldner
                                      Authorized Signatory
                                      Robert & Norman Properties LLC

APPROVED AS TO FORM

                                      Aqua Terra Aeris Law Group

Dated: _____, 2026          By: _____
                                      Erica A. Maharg
                                      Attorney for Plaintiff
                                      Los Angeles Waterkeeper

                                      Cox, Castle & Nicholson LLP

Dated: _____, 2026          By: _____
                                      Ira J. Klein
                                      Attorney for Defendants
                                      Felbro, Inc. and Robert & Norman
                                      Properties LLC

CONSENT DECREE

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: MARCH 9, 2026                    CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE ANNE HWANG
United States District Judge

31
CONSENT DECREE